1          UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3
     UNITED STATES OF AMERICA,        )
4                                     )
                    Plaintiff,        )
5                                     )
                 vs.                  )  No. 18 CR 509-3
6                                     )
     KEVIN DELANEY,                   )  Chicago, Illinois
7                                     )  June 19, 2019
                    Defendant.        )  10:37 a.m.
8

9          TRANSCRIPT OF PROCEEDINGS - Sentencing

10       BEFORE THE HONORABLE ROBERT W. GETTLEMAN

11
   APPEARANCES:
12
   For the Plaintiff:      HON. JOHN R. LAUSCH, JR.
13                         UNITED STATES ATTORNEY
                           BY:  MR. CORNELIUS A. VANDENBERG III
14                         Assistant United States Attorney
                           219 South Dearborn Street, Room 500
15                         Chicago, Illinois  60604
                           (312) 353-5300
16

17   For the Defendant:     MR. JOHN C. LEGUTKI
                           53 West Jackson Boulevard, Suite 920
18                         Chicago, Illinois  60604
                           (312) 939-8747
19

20   Also Present:          MS. MAJA BOSNJAK, U.S. Probation

21

22

23   Official Court Reporter:  NANCY L. BISTANY, CSR, RPR, FCRR
                               219 South Dearborn Street, Room 1706
24                             Chicago, Illinois 60604
                               (312) 435-7626
25                             nancy_bistany@ilnd.uscourts.gov

1    (Proceedings heard in open court:)

2            THE CLERK:  18 CR 509-3, USA versus Kevin Delaney.

3            MR. VANDENBERG:  Good morning, Your Honor.

4       Cornelius Vandenberg on behalf of the United States.

5            MR. LEGUTKI:  Good morning, Your Honor.

6            John Legutki, L-e-g-u-t-k-i, on behalf Kevin Delaney.

7    Mr. Delaney is to my immediate right.

8            THE COURT:  Good morning, folks.

9            This is here for sentencing and disposition.  And

10   I've reviewed the Presentence Report and the memos, and I'm

11   prepared to proceed.

12           I think we all agree on the guidelines issues; is

13   that right?

14           MR. VANDENBERG:  I believe that's correct, Your

15   Honor.  In the defendant's sentencing memorandum, they did

16   state that the criminal history score should be lower, but I

17   believe that was out of the 3553 argument as opposed to

18   actually disagreeing with the --

19           THE COURT:  Right.  Well, there was a difference in

20   the plea agreement and the PSR, because the plea agreement you

21   had counted a conviction when Mr. Delaney was a minor, so --

22           MR. VANDENBERG:  Yes.

23           THE COURT:  -- so that was the difference.

24           MR. LEGUTKI:  That's certain -- and that was charged

25   as an adult, but that particular caveat within the USSG is if a

1  person is under 18 at the time of the arrest.

2  THE COURT:  Okay.  So the offense level -- the agreed

3  offense level here is 24 -- I'm sorry -- 15, and the Criminal

4  History is III.  And the advisory guideline range is between 24

5  and 30 months.

6  MR. VANDENBERG:  Yes, Your Honor.

7  MR. LEGUTKI:  Yes, Your Honor.

8  THE COURT:  Okay.  I'm prepared to proceed then.  I

9  guess we're talking about 3553 factors.

10  MR. LEGUTKI:  Your Honor, and I appreciate my

11  colleague's summation of my objections -- or not so much my

12  objections, but my approach to the guideline calculations.

13  And where the criminal history fits, if it's in a

14  certain criminal history category, before we discuss the 3553

15  categories or the 3553(a) categories, Judge, I just don't know

16  how exactly that fits in.  But -- but please allow me to

17  address the criminal history objection or consideration that I

18  had.

19  THE COURT:  Okay.

20  MR. LEGUTKI:  And -- and probation does calculate a

21  total of four criminal history points, and a total of two

22  points were added because Mr. Delaney was on court supervision

23  for driving under the influence offense.  We'll call that a

24  DUI.

25  Judge, as kind of the creature of the Illinois

1    criminal law, our legislature many, many years ago in Illinois

2    created this thing called supervision.  And supervision is a

3    conditional discharge, a deferred judgment, however you want to

4    phrase it, that if you complete supervision, the underlying

5    case is dismissed.

6            So while I don't think that probation

7    mischaracterized anything, and I will concede that Mr. Delaney

8    was on court supervision, but but for his ability to pay the

9    fine and costs, his supervision would have been terminated

10   satisfactorily.

11           Then you go back to, well, if the case was --

12   supervision was appropriately accounted for, then the

13   underlying case would have been dismissed, and he would not

14   have that one criminal history point for the DUI.  And the

15   supervision would have been a nullity because the underlying

16   case is dismissed.

17           Again, Judge, I do concede that Mr. Delaney was on

18   court supervision, but I -- but I think, given how Illinois

19   approaches supervision and but for his ability -- inability to

20   pay, I think that criminal history is overstated.  And I said a

21   better, more meaningful approach would be to disregard the one

22   point added for the 2016 DUI and the two points added for

23   Mr. Delaney being on court supervision.

24           So that would take it -- take it down to three

25   criminal history points.  Six minus three is three, and that

1  would be a Category II, and I made a sentencing recommendation

2  consistent with that.

3      As to other 18 U.S.C. 3553 considerations, Your

4  Honor, I presented some certificates that Mr. Delaney -- he has

5  worked hard.  Judge, I think we've all been in situations where

6  we see someone who is so far off the spectrum, there's no hope

7  for that person.

8      I think Mr. Delaney has demonstrated, even before

9  this arrest, that he has an ability and a wanting to get into

10  mainstream, to take care of his kids.  His fiance, his mother,

11  his stepmother, and his brother are all here.  He has a family

12  support, and he has somewhere to go, and he has a job, too.

13      So I think that the fact that he was employed, has

14  somewhere to go, has pled guilty to this case just indicated --

15  indicative -- I respectfully submit it's indicative that

16  Mr. Delaney is serious about not being a recidivist.  He's

17  serious about getting his life together.

18      And I ask the Court to please consider a low-end

19  sentence as I had proposed of 21 months in this matter, or if

20  the Court would go by the PSR calculation of the criminal

21  history, a low end of the 24 month or any sentence that this

22  Court feels appropriate is greater but not more than necessary

23  to address this issue.

24      Thank you, sir.

25      THE COURT:  Okay.  Thank you.

1     MR. VANDENBERG:  Yes, Your Honor, just briefly before
2  addressing the 3553.
3     It is the government's understanding that the defense
4  does not object that probation did, in fact, appropriately
5  calculate the guideline range here but is seeking departure
6  based on how the probation or how the -- whether the
7  defendant's inability to pay the fines while on supervised
8  release.
9     With regards to the 3553 factors, Your Honor, I'd
10 like to start first with the seriousness of the crime.
11    This is a very serious offense.  This was a
12 previously convicted felon.  He possessed a firearm.  There's
13 reason we have those laws to prevent the spread of firearms and
14 prevent felons from having them.  He possessed it while he was
15 on court-ordered probation.  Regardless of the basis for that,
16 he was on court probation at the time he possessed it.
17    The firearm had an obliterated serial number.  That
18 is where a bulk of the sentencing guideline range comes from.
19 The reason for having an obliterated serial number is to make a
20 gun less traceable, to make it less traceable when it's used in
21 violent crimes.
22    So when someone has a firearm with an obliterated
23 serial number, the courts recognize it as being a more serious
24 offense.  And the defendant not only possessed this firearm --
25 this wasn't something that was under his bed or in his closet

1    or in a gun safe in his house -- he was trafficking it.  He was

2    going to sell it for his own personal profit, and he was using

3    another felon as his broker for this transaction.

4          So he was putting this firearm with an obliterated

5    serial number out into the community and selling it essentially

6    on the black market through another felon.  The defendant acted

7    with complete disregard for any potential victims who could

8    have been targeted by a gun that by its very nature was meant

9    to be untraceable.

10         With regards to the history and characteristics of

11   the defendant, the defendant has eight prior convictions,

12   including convictions for aggravated battery, battery,

13   aggravated assault, for possession of cannabis.

14         The defense does make the argument today that his

15   criminal history was overstated because if he had money to pay

16   his court fees, he wouldn't have been on supervised release at

17   the time of this offense.

18         First of all, that ignores the purpose of adding

19   someone's points -- points to someone's criminal history

20   because they were on probation at the time.  The reason a court

21   does that is because a person on supervised release is being

22   instructed by a court to follow specific rules to essentially

23   be on their best behavior.

24         However this defendant ended up on his supervised

25   release, whether his inability to pay or because of the

1    underlying driving under the influence event, it's clear that
2    he did not take that supervised release -- that probation
3    seriously, that being on probation had no impact on his
4    actions, on his decision to not only possess this firearm but
5    to sell it into the black market.

6            If anything, the defendant's criminal history score
7    does not adequately reflect the extent of the defendant's
8    criminal history.  By the way that we calculate guidelines, the
9    defendant does not receive any criminal histories points for
10   his 2008 conviction for possession of cannabis, his 2008
11   conviction for aggravated battery, or his 2012 conviction for
12   obstruction.

13           And I'm not saying that he should receive criminal
14   points for those 3553 factors.  It's certainly something the
15   Court can consider in terms of the defendant's history and
16   characteristics.

17           In addition to the criminal history, the defendant
18   also has an order of protection out against him held by the
19   mother of his three children.  The defendant was also a member
20   of the Imperial Gangsters street gang for over a decade, though
21   he denies being a member of it now.

22           Finally, with regards to the need for protection and
23   deterrence, first and foremost, a longer sentence would protect
24   the community from this defendant and any additional weapons
25   that he would possess or sell onto the black market upon his

1    release.  A guideline sentence is necessary for specific

2    deterrence to prevent this defendant from possessing a firearm.

3         His sentences for those past eight criminal

4    convictions were clearly insufficient to deter his actions in

5    this case, as was the fact that he was on probation at the time

6    of the events.

7         It's also important to stress the need for general

8    deterrence.  Gun-related deaths and injuries have taken

9    immeasurable toll on the Northern District of Illinois, a toll

10   that Your Honor is as much, if not more, aware of than I am

11   over the past few years.

12        A guideline sentence is necessary to make it clear

13   that when a felon decides not only to possess but to traffic a

14   firearm, to possess a firearm with an obliterated serial

15   number, that his conduct will not be tolerated, and it is

16   necessary to deter others from taking similar actions.

17        For all these reasons, the government does seek a

18   guideline sentence between 24 and 30 months' imprisonment.

19        MR. LEGUTKI:  May I respond, sir?

20        THE COURT:  Thank you.  Sure.

21        MR. LEGUTKI:  Your Honor, thank you.  Thank you,

22   Mr. U.S. Attorney.

23        Your Honor, I think this underscores the difference

24   between -- my colleague keeps on referring to his probation,

25   that Mr. Delaney was on probation.

1          Probation is when someone is convicted of an offense.

2     That's what happens in Illinois.  If you are convicted on -- of

3     something, you are placed on probation or sent to jail.

4          Mr. Delaney was not convicted of the DUI.  He was

5     given court supervision.  That is a deferred prosecution

6     provision in Illinois law.  I have outlined it in my -- in my

7     pleading.  So the Court at that point decided, based on the not

8     so -- it's a serious offense, but it decided to give

9     Mr. Delaney a chance.  They gave him court supervision.

10          As to the obliterated serial number, there's no

11     indication of evidence, nothing that I saw in the pleadings

12     that would indicate that Mr. Delaney is a person who

13     obliterated that serial number.  It was just a handgun.  That's

14     a serious enough offense, Your Honor.  I'm not denying that.

15     There's no indication that Mr. Delaney took some sort of

16     affirmative steps to obliterate the serial number.

17          As to passing to another felon, again, Your Honor,

18     Mr. Delaney did not conduct a presentence report on the person

19     to whom he was transferring this gun.  Whether it's another

20     felon, that is irrelevant.

21          And counsel recites or promotes the fact that there

22     was zero criminal history points attributed to Mr. Delaney when

23     he was 17 years old and other offenses.  Well, there's a reason

24     for that, Judge, no criminal history points.  He was 17 years

25     old at the time.  The guideline takes that into consideration

1    at the young age.

2            Therefore, the base level offense went from a 20 to a

3    14, and I think that's an appropriate consideration.

4            Again, sir, I respectfully suggest that Mr. Delaney

5    get a sentence of -- either a 21-month sentence as the

6    calculations as I suggested or a low-end guideline sentence as

7    probation outlined.

8            THE COURT:  Thank you.

9            Anything else?

10           MR. VANDENBERG:  Just to point out, although the

11   defendant may not have run a background check on Mr. Acevedo,

12   he was, again, selling a gun with an obliterated serial number

13   in a parking lot for cash.

14           There are certain expectations that the person you're

15   selling it for may not be, you know, just necessarily your

16   run-of-the-mill gun enthusiast, that there may be a reason that

17   that is why the transaction is taking place in the manner that

18   it is taking.

19           THE COURT:  All right.  Thank you.

20           Mr. Delaney, is there anything you'd like to say?

21           THE DEFENDANT:  No.

22           THE COURT:  All right.

23           MR. LEGUTKI:  Your Honor, Mr. Delaney and I did work

24   on a letter that was submitted to the Court.  It was a personal

25   statement and would like -- it was part of the sentencing

1  memorandum.

2           THE COURT:  Right.

3           MR. LEGUTKI:  I'd like that to be part of the record.

4           THE COURT:  Okay.  You'll stand -- you're standing on

5  that?

6           MR. LEGUTKI:  Thank you, sir.

7           THE COURT:  Okay.  All right.  Thank you.

8           Well, Mr. Delaney, I also got a report from our

9  probation officer that you've been sort of a model detainee,

10  and you've had really good experience while you were at the MCC

11  and have been recognized for that.  So that also is in your

12  favor.

13           But I have to agree with Mr. Vandenberg that these

14  gun violations are taken very seriously.  This is why the

15  federal government is pursuing so many of these cases today

16  because of all the gun violence in Chicago.

17           You have four children.

18           THE DEFENDANT:  Yes.

19           THE COURT:  And you know probably better than anybody

20  else among us here the dangers that these children face every

21  day in the streets of Chicago with gun violence.  Just the

22  other day a four-year-old child was shot.

23           I consider these very, very serious crimes.  You do

24  have a record.  Even though the guidelines -- we can be

25  technical about the guidelines and how they apply here.  When

1   you pled guilty, you were looking at a 46-month to 57-month
2   sentence.  Because of the proper calculation by our probation
3   officer, you know, it's come way down from there because of
4   your age at the time of a very serious criminal conviction.

5          But that doesn't excuse what you did.  I agree that
6   selling a gun out on the street like that to somebody who you
7   think is, I don't know, going to use it for something --
8   whether you obliterated that number or not, it was obliterated.
9   And the only reason that people buy guns with obliterated
10  serial numbers is to use it improperly.  And it could have been
11  used in a manner that endangered your own children or somebody
12  else's.  It's really serious.

13         As a convicted felon, you are not to possess a
14  weapon, period.  And not only possessing it, but trafficking in
15  it in a sense, it could have been -- you could have been
16  charged with trafficking, and it could have been even a higher
17  sentence.

18         So I think you do show signs of acknowledging what
19  you did.  I know you had a very challenging childhood, and
20  you've got some substance abuse problems that I think can be
21  addressed as part of the sentence here.  But I also -- I also
22  think the guidelines are properly calculated, in fact
23  generously calculated here, and that I'm comfortable with
24  giving you a low-end guideline sentence.  You've already served
25  about nine -- about nine months as I --

1      MR. LEGUTKI:  Nine and a half.

2      THE COURT:  Yes.  So there's not that much time left

3  on your sentence.  I hope you use it well.  I hope you continue

4  to be as responsible while you're serving the months that are

5  remaining on your sentence and maybe get your GED while you're

6  there and, you know, move on with your life and put this behind

7  you so that you can live your life without having to stand

8  before a judge in an orange jumpsuit again.  I really hope

9  that's possible.

10      So for that reason, I think a sentence of 24 months,

11  which is the low end of the guidelines here, is appropriate.

12  You'll be given credit for the time you've served, obviously.

13  And there will be a period of three years supervised release.

14  We'll go over those conditions in a moment.

15      There's no money to pay a fine here.  There's a $100

16  special assessment payable today.  And you do have a right to

17  appeal this sentence if you wish by filing a notice within 24

18  hours -- within 24 days -- I'm sorry -- 14 days of today.  And

19  your attorney can certainly advise you about that.

20      So let's go over the terms of the mandatory

21  conditions of supervised release.

22      Before I do that, do you have a recommendation?  I

23  mean, there's so little time left I'm not sure they would

24  designate him, but if they do --

25      MR. LEGUTKI:  Otisville, New York.

1          THE COURT:  Otisville, New York?

2          THE DEFENDANT:  There's a program.

3          THE COURT:  Okay.  I don't think there's enough time

4    for the RDAP program.

5          MR. LEGUTKI:  We're going to respectfully request it

6    nevertheless, sir.

7          THE COURT:  Okay.  I think there has to be 24 months

8    at least, but at least if we recommend it, that will be a

9    signal to be BOP that he should participate in whatever they

10   can do with him.

11         MR. LEGUTKI:  Thank you, sir.

12         THE COURT:  I don't know anything about Otisville,

13   but I'm happy to recommend it.

14         All right.  Let's go over the terms of supervised

15   release.  These are conditions, Mr. Delaney, that you would

16   have to comply with after you finish serving your sentence for

17   the three-year period that you're on supervised release.

18         So if you turn to page 21 of the Presentence Report,

19   you can follow along with me.  And Mr. Legutki and Mr. Delaney,

20   tell me if you object to any of these.  They're pretty

21   standard, but we have to go through them.

22         So, first of all, you can't commit another crime.

23   You can't possess a controlled substance.  Cooperate in a DNA

24   sample.  Refrain from using controlled substances and submit

25   yourself to testing as stated in paragraph 6 beginning on page

1  21.

2        Provide financial support to your dependents.  You've

3  got enough of them.  I think it's important.  Seek work

4  conscientiously.  That's No. 4, which I think I know you want

5  to do.

6        Don't communicate with anybody or meet with anybody

7  you know is involved in criminal activity, particularly any

8  members of the Imperial Gangsters.

9        MR. VANDENBERG:  And, Your Honor, the defense did

10  object to that supervised release condition in their sentencing

11  memo.

12        THE COURT:  You want to say something about the

13  family members?

14        MR. LEGUTKI:  His brother, Your Honor, Matthew, is a

15  member of that social organization, Your Honor.  So it -- I

16  talked to U.S. Probation prior to this proceeding, and I asked

17  for a caveat be made for family -- immediate family members.

18        MR. VANDENBERG:  The government has no objection to

19  that, Your Honor.

20        THE COURT:  Okay.  We'll put -- we'll add that to

21  that.  Okay.  That's to No. 6.

22        But no other people involved in that organization,

23  okay?

24        No. 7, I would change that from "any" to "excessive

25  use of alcohol."

1       MR. LEGUTKI:  Thank you, sir.

2       THE COURT:  I don't want anybody getting in trouble

3  having a beer at a ballgame or something like that.

4       You cannot possess a firearm again, and that's why

5  you're here today, or destructive device or any weapon.

6       No. 9, participate in a substance abuse program and a

7  mental health treatment program, which I think you could

8  probably use.

9       Now, you're going to be -- when you're released -- if

10  you're released -- I guess I'm curious about why Mr. Delaney

11  wants to be -- to go to the New York institution.

12       MR. LEGUTKI:  Mr. Delaney is of the opinion that they

13  have the best drug/alcohol rehabilitation program available.

14       THE COURT:  All right.  But he's -- he anticipates

15  being released back here?

16       MR. LEGUTKI:  Eventually, yes.

17       THE COURT:  I mean, so this -- okay.  That's what I

18  wanted to know.

19       So for No. 14 on page 23 there, you've got to remain

20  in the jurisdiction where you are released, which consists of

21  the counties that are specified in that paragraph.

22       Report to your probation officer when required and

23  permit the probation officer to visit you at any reasonable

24  time as specified, but except I don't -- I don't check off the

25  at home or at school or community service.  I don't think those

1    are appropriate, but at home or other reasonable place and

2    permit confiscation of any contraband, which I hope doesn't

3    happen.

4         Notify your probation officer, Mr. Delaney, of any

5    change in your residence or workplace or any other major part

6    of your life within 72 hours.

7         And also No. 18, within 72 hours, if you have any

8    contact with law enforcement, even a traffic ticket or

9    something like that, call your probation officer and tell them

10   so that we can eliminate any unnecessary paperwork.

11        Have you -- you're working on your GED now; is that

12   right?

13        THE DEFENDANT:  Yes.

14        THE COURT:  Okay.  Well, then I think we should make

15   sure that you continue to do that.  If you're not able to, if

16   you're designated quickly, if you're going to stay at the MCC,

17   then that would be something that you should do.  It's No. 1 on

18   page 25 there.

19        Participate in a job training skill if you're not

20   employed already.  If you are unemployed -- you have a job

21   waiting for you, don't you?

22        THE DEFENDANT:  Yes.

23        THE COURT:  Okay.  I'm going to take out No. 3 then.

24   I don't think we need to do that since you already have a job.

25        Don't incur any new credit charges or lines of credit

1    without approval.

2         MR. LEGUTKI:  Your Honor, I objected to that one.  I

3    think that was written pre-internet.

4         THE COURT:  Pre-internet?

5         MR. LEGUTKI:  Yeah.  I just can't see having a cell

6    phone or internet or --

7         THE COURT:  Well, it doesn't say you can't have it.

8    It just means that you have to check with the probation

9    officer.  And if there's a problem, you can come and see me

10   about it.

11        MR. LEGUTKI:  Very well, sir.

12        THE COURT:  I think that's all -- I think that's all

13   that means.  They want to make sure that he doesn't get over

14   his head in debt or anything like that, because he did sell

15   this gun for money.  He made a stupid decision because he

16   needed some money, I guess, but -- so I think that's

17   appropriate.

18        Provide any financial information as requested, No. 6

19   there.  Notify of any material changes in your economic

20   circumstances.

21        There is no financial penalty here except the $100 --

22        THE CLERK:  Buy money.

23        THE COURT:  Oh, there's buy money?  Okay.  I'm told

24   there's buy money.

25        How much is the buy money?

1      MR. VANDENBERG:  $400, Your Honor.

2      THE COURT:  Okay.

3      THE CLERK:  That's No. 12.

4      THE COURT:  Okay.  All right.  So I guess we'll leave

5  No. 10 in at 10 percent of your income, but hopefully you get

6  that paid off quickly enough.

7      Don't enter into any agreement to be an informer or

8  law enforcement agent of any kind without Court approval.  Pay

9  the buy money.

10     And then No. 14 I think is something very important.

11 We have a reentry program in this court.  You're a young man

12 with family obligations.  It's been very successful.  We're

13 not -- I'm not requiring you to -- to participate in it, but we

14 want you to observe at least one session of the reentry court.

15 These are conducted by some judges, some of my colleagues who

16 are judges, also prosecutors and defense lawyers, probation

17 officers.  And they are there to help people get back into the

18 community, find employment, if necessary, deal with any other

19 types of problems.

20     It's a really good program.  We just want you to

21 observe one of them when you come out, so that you can make a

22 decision as to whether you want to apply to get into the

23 program.  And I think it's really good -- it's for your

24 benefit.

25     Any objection to any of the ones we hadn't --

1          MR. LEGUTKI:  No, sir.

2          MR. VANDENBERG:  No, Your Honor.

3          THE COURT:  -- that we hadn't already dealt with?

4          Okay.  All right.  Well, good luck, Mr. Delaney.  I

5     hope you really make this the last time you're going to have to

6     stand in front of a judge, and I really -- I'm hopeful that

7     that will happen.

8          Thank your family for being here.  Court will be

9     recessed.

10          MR. LEGUTKI:  Thank you.  Thank you, sir.

11         (Proceedings concluded.)

1          C E R T I F I C A T E

2

3

4          I, Nancy L. Bistany, certify that the foregoing is a

5    complete, true, and accurate transcript from the record of

6    proceedings on June 19, 2019, before the HON. ROBERT W.

7    GETTLEMAN in the above-entitled matter.

8

9

10   */s/ Nancy L. Bistany, CSR, RPR, FCRR*          October 28, 2019

11          Official Court Reporter                   Date
            United States District Court
12          Northern District of Illinois
            Eastern Division
13

14

15

16

17

18

19

20

21

22

23

24

25